1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF ARIZONA**

8
Francisco Javier Romero,

9
        Romero,

10
vs.

11
Dora B. Schriro, et al.,

12
        Respondents.

CV 08-0542-PHX-ROS (JR)

**REPORT AND RECOMMENDATION**

13

14

15
        Pending before the Court is Francisco Javier Romero's Amended Petition for

16
Writ of Habeas Corpus (Doc. 63) filed pursuant to 28 U.S.C. § 2254.  In accordance

17
with the Rules of Practice of the United States District Court for the District of

18
Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge

19
for report and recommendation.  Romero commenced this action by filing his

20
original petition on March 19, 2008 (Doc. 1).  The matter was stayed from May 4,

21
2009, through May 12, 2014, to allow Romero to return to State court to exhaust one

22
of his claims.  (Docs. 26, 62).  On May 12, 2014, Romero filed the pending Amended

Petition, raising three grounds for relief (Doc. 63).  Respondents filed a response (Doc. 66), to which Romero replied (Doc. 72).  As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     Trial

On February 6, 2002, the State charged Romero with four counts of second-degree murder, class 1 dangerous felonies, and three counts of aggravated assault, class 3 dangerous felonies.  *Answer to Petition for Writ of Habeas Corpus* ("*Answer*"), Ex. C, Att. 1, p. 4.[1]  In its Memorandum Decision affirming Romero's convictions and sentences, the Arizona Court of Appeals summarized the factual background as follows:[2]

> [Romero] was driving his black Sports Utility Vehicle ("SUV") south on Pima Road in Scottsdale.  The posted speed limit was 55 miles per hour. [Romero] was driving between 66 to 70 miles per hour faster than the posted speed limit.  [FN1: The police estimated that [Romero's] pre-collision speed was between 121 and 125 miles per hour.] Many other drivers were forced to maneuver their vehicles to avoid [Romero's] erratic driving.

---

[1] Unless otherwise indicated, all exhibit references are to the exhibits attached to Respondents' Answer (Doc. 66).

[2] The factual summary of the Arizona Court of Appeals is accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002)).

As [Romero's] vehicle passed through the intersection of Pima Road and Happy Valley Road, it became airborne and hit an oncoming vehicle. After the vehicle landed, [Romero] was unable to gain control and the vehicle collided with two additional vehicles. In the ensuing collisions, four people, including a family of three and one of [Romero's] passengers, were killed. Three others were severely injured, including another of [Romero's] passengers.

A nurse and a police officer testified that they had smelled alcohol on [Romero's] person.   [Romero's] blood, drawn at the hospital where he received treatment for his severe injuries, showed a blood alcohol content ("BAC") of .113.  Criminalist John Tew estimated that [Romero's] BAC at the time to the accident had been .139.

[Romero] testified on his own behalf.  He claimed that he had not been intoxicated on the day of the collision and that his maximum speed had been 70 miles per hour. [Romero] also claimed that a dip in the road, not his unlawful and excessive driving, had caused his vehicle to go airborne and hit the other drivers.  However, numerous witnesses contested [Romero's] account of the events and his testimony regarding his driving.

Ex. C, Att. 1, pp. 2-3.

The jury found Romero guilty of four counts of manslaughter, class 2 felonies and dangerous offenses, and three counts of aggravated assault, class 3 felonies and dangerous offenses.  Ex. Z.  On February 14, 2003, the trial court sentenced Romero to concurrent terms of twenty-one years of imprisonment on the four counts of manslaughter and to concurrent terms of ten years of imprisonment on the three counts of aggravated assault, with the sentences for the manslaughter convictions and aggravated assault convictions to run consecutively.  Ex. C, p. 3.

**B.      Direct Appeal**

Romero then appealed his conviction to the Arizona Court of Appeals. *Answer*, Ex. B (Appellant's Opening Brief).  Romero argued that the trial court erred in denying his request for a jury instruction on superseding cause.  *Id*., pp. 6-14. Romero claimed that a dip in the road caused his vehicle to become airborne and was the superseding cause of the accident.  *Id*.  The Arizona Court of Appeals determined that the trial court had properly declined to give Romero's requested instruction, and affirmed Romero's convictions and sentences on March 23, 2004.  Ex. C, Att. 1.  The Arizona Supreme Court denied review on August 19, 2004.  Ex. D.

**C.      First PCR Petition**

On October 5, 2004, Romero filed a notice of post-conviction relief ("First PCR").  Ex. E.  In the subsequently filed petition, Romero, relying on *Blakely v. Washington*, 542 U.S. 296 (2004), argued that the trial court violated his right to trial by jury by sentencing him to an aggravated sentence, and that his trial counsel was ineffective for failing to inform Romero of the rights described in *Blakely*.  Ex. F. On July 22, 2005, the trial court denied Romero's First PCR.  Ex. H.  The Arizona Court of Appeals denied review of Romero's First PCR on September 28, 2005.  Ex. J.  The Arizona Supreme Court denied review on February 8, 2007.  Ex. L.

**D.      Second PCR Petition**

On October 26, 2006, while his First PCR remained pending, Romero filed another PCR petition ("Second PCR").  Ex. M.  In the Second PCR, Romero argued that the Maricopa County jury selection procedures, identified as the "Proximity

1  Weighted Jury Selection System" (variously referred to as the "PWS," "PWSS" or

2  the "PWJS"),[3] violated the United States and Arizona Constitutions.  *Id.*, p. 7.  The

3  trial court accepted Romero's untimely Second PCR, finding that Romero

4  "sufficiently raised a claim of newly discovered material facts."  Ex. N, p. 1.  In a

5  Minute Entry dated February 28, 2007, the trial court stated that "the method of

6  selecting the voir dire panel in [Romero's] case was not in accordance with the

7  statutory scheme and therefore not in conformity with the requirements to the

8  Arizona State Constitution," and scheduled an evidentiary hearing on whether

9  Romero had received a trial before a fair and impartial jury.  Ex. W.

10         Subsequently, however, by Minute Entry dated March 7, 2007, the trial court

11  vacated its previous findings and ordered that Romero's Second PCR be transferred

12  and consolidated with other cases raising similar claims regarding the PWS.  Ex. O.

13  In April 2007, Judge O'Neil indicated that Romero's case was subject to the court's

14  "expansive ruling on August 9, 2006, regarding the jury selection process in

15  Maricopa County," and ordered that Romero be provided a copy.  Ex. P.  Neither

16  party has provided a copy of the August 9, 2006 order, however, on October 25,

17  2007, Judge O'Neil issued a ruling on the consolidated matter finding that Maricopa

18  County's PWS was random and conformed to the Arizona statutes.  *Motion for Stay*

19  *of Proceedings* (Doc. 19), Ex. J.  Judge O'Neil's decision was appealed, but in a

20  decision issued on March 26, 2009, the Arizona Court of Appeals found that it was

21  _____

22  [3] Unless directly quoting another source, the Court employs the designation "PWS" in this Report and Recommendation.

1  without jurisdiction to decide the case because Judge O'Neil's decision was not

2  incorporated into the individual cases and there was no final judgment with regard to

3  any completed matter. *In re Jury Selection Process in Maricopa Cnty*, 220 Ariz. 526,

4  528-29 (App. 2009).

5  **E.    Third PCR Petition**

6  Subsequently, May 4, 2009, Romero filed a motion to sever his case from the

7  consolidated matter, alleging that Romero's case was given short-shrift by counsel in

8  the consolidated cases, explaining that the underlying litigation had concluded, and

9  asking that Romero's case be returned to the trial court. Ex. R.  After two years had

10  passed without a trial court ruling on the motion to sever, Romero filed a renewed

11  motion to sever on May 20, 2011.  Ex. S.  The trial court granted the motion in June

12  2011, and after granting several extensions, Romero filed a third PCR petition on

13  March 8, 2012, arguing that: (1) the trial court's rescinded February 28, 2007 Minute

14  Entry (Ex. W) finding that "the method of selecting the voir dire panel in [Romero's]

15  case was not in accordance with the statutory scheme and therefore not in conformity

16  with the requirements to the Arizona State Constitution," entitled him to an

17  evidentiary hearing; (2) the trial court did not have the authority to consolidate the

18  jury selection claims and refer them to Pinal County Judge O'Neil; (3) Pinal County

19  could not properly exercise jurisdiction over the matter; and (4) Judge O'Neil's

20  ruling was incorrect. Ex. T.  By order dated July 30, 2012, the trial court denied each

21  of the claims, finding that relief was not available under the rescinded February 28,

22  2007 Minute Entry, that the presiding Maricopa County judge had the authority to

1    consolidate and transfer the PWS cases to Judge O'Neil, that Pinal County properly

2    exercised jurisdiction over the consolidated claims, and that Judge O'Neil's decision

3    could not be revisited as it constituted the "law of the case."  Ex. S, pp. 3-5.

4          Romero sought review of the trial court's decision, arguing that (1) Judge

5    O'Neil exceeded his judicial powers by ruling on issues outside the scope of the

6    referral order; (2) that the trial court improperly relied on law of the case doctrine in

7    refusing to review the merits of Judge O'Neil's order; (3) that the PWS violated

8    Romero's right to a fair trial; and (4) that Judge O'Neil's order was based on suspect

9    evidence.  Ex. U.  The Arizona Court of Appeals granted review by denied relief,

10   finding that, because Romero could have, but did not properly challenge, Judge

11   O'Neil's ruling as an individual, and because he did not argue that his claims were

12   exempt from preclusion and did not establish the claims were based on newly-

13   discovered evidence, they were precluded from review.  *Arizona v. Romero*, 2014

14   WL 311360 (Ariz. App. Jan. 28, 2014).

15        **F.    Habeas Petition**

16        In his original petition filed on March 19, 2008, Romero alleged two grounds

17   for relief.  In Ground One, he argued that the trial court's failure to give a jury

18   instruction on superseding cause violated his due process rights.  (Doc. 1, pp. 7-8).

19   In Ground Two, he argued that the trial court's sentencing procedures and

20   aggravating factors considered in imposing his sentence violated his Sixth

21   Amendment rights to a trial by jury as articulated in *Blakely v. Washington*, 542 U.S.

22   296 (2004).  (*Id.*, pp. 8-10).     In his Amended Petition, Romero repeats his original

claims and adds as Ground Three the claim that the State court's analysis of whether the PWS excluded any identifiable group, or whether Romero was prejudiced, violated his rights as described in *Taylor v. Louisiana*, 419 U.S. 522 (1975), and *Duren v. Missouri*, 439 U.S. 357 (1979).

## II.    TIMELINESS

Respondents' first contention is that Romero's Ground Three claim, asserting that his rights were violated by the PWS system used by Maricopa County, is time-barred.  The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  Petitions filed beyond the one-year limitations period must be dismissed.  *Id.* The statute provides in pertinent part that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In Romero's direct appeal proceedings, the Arizona Supreme Court denied review on August 19, 2004.  Ex. C. Romero then had 90 days to petition the U.S. Supreme Court for review.  *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) (if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the 90-day filing period provided by Supreme Court Rule 13 expires).  Romero did not seek United States Supreme Court review.   However, Respondents fail to recognize that the limitations period was statutorily tolled when Romero filed his First PCR notice on October 5, 2004.   Ex. E; *see* 28 U.S.C. § 2244(d)(2); Ariz.R.Crim.P. 32.2(a). Romero's properly filed First PCR petition remained pending until February 8, 2007, when the Arizona Supreme Court denied relief.  *See Lawrence v. Florida¸* 549 U.S. 327, 332 (2007).

Additionally, while his first PCR remained pending, Romero filed a Second PCR petition on October 26, 2006.  Ex. M.  It was in that petition that he argued his PWS claim.  *Id*.  The trial court accepted the filing, finding that he had "sufficiently raised a claim of newly discovered material facts."  Ex. N, p. 1.  The PWS issue raised in the Second PCR was transferred to Judge O'Neil, who issued his order denying the consolidated claims. *Motion to Stay Proceedings* (Doc. 19), Ex. J.  Then

9

things, at least insofar as the calculation of the AEDPA statute of limitations is involved, took a very confusing turn.  Instead of seeking to have Judge O'Neil's decision incorporated into each of the consolidated cases, Judge O'Neil's decision in the consolidated case was appealed.  However, the Arizona Court of Appeals, on March 26, 2009, found that it was without jurisdiction to review the consolidated cases as a group, but stated the decision was "without prejudice to any party seeking relief from Judge O'Neil's ruling in the individual matter in which the ruling was relied upon."  *In re Jury Selection Process in Maricopa Cnty*, 220 Ariz. at 531.

Presumably based on the Court of Appeals' prompt, on May 4, 2009, Romero filed a motion to sever his case from the consolidated matter.  Ex. R.  After two years of inaction on the motion, on May 20, 2011, Romero renewed the motion.  Ex. S.  The trial court granted the motion to sever and allowed Romero to file a Third PCR petition.  Exs. S, T.  On July 30, 2012, the trial court addressed the merits of Romero's claims, finding that "Judge O'Neil's ruling that the PWSS comports with Arizona law disposes of all the issues raised by the defendant, and denied the Third PCR petition.  Ex. S, p. 5.

Romero then sought review of the trial court's decision and raised his PWS claims in the Arizona Court of Appeals.  Ex. U.  Given that the appeals court had previously suggested that the parties seeking relief from Judge O'Neil's order pursue it in their individual matters, it must have come as quite a surprise when the Arizona Court of Appeals ruled that Romero could have, but did not properly challenge, Judge O'Neil's ruling as an individual, and because he did not argue that his claims

were exempt from preclusion and did not establish the claims were based on newly-discovered evidence, they were precluded from review.  *Arizona v. Romero*, 2014 WL 311360 (Ariz. App. Jan. 28, 2014).   In support of its decision, the Court of Appeals was critical of Romero for failing "to seek review of Judge O'Neil's ruling as an individual . . . ."  *Id.* at *3.  The court stated, "[s]pecifically, Romero did not seek, as an individual, appellate or special action relief directly from Judge O'Neil's 2007 ruling."  *Id.*  This Court guesses he did not individually seek relief directly from the ruling because the Arizona Court of Appeals previously told the petitioners in the consolidated matter to "seek[] relief from Judge O'Neil's ruling in the individual matter in which the ruling was relied upon."  *In re Jury Selection Process in Maricopa Cnty*, 220 Ariz. at 531.   As well as this Court can understand what happened, Romero did what the Court of Appeals had instructed him to do and was then told by the same court that he had proceeded improperly.

With all this said, this Court recommends that the District Court find that Romero had a properly filed application for State post-conviction review pending from October 4, 2004, the filing date of his First PCR, until January 28, 2014, when the Court of Appeals denied relief on his Third PCR.  *See* 28 U.S.C. § 2244(d)(2).  Romero then had one year pursuant to 28 U.S.C. § 2244(d)(1) to file his federal habeas corpus petition.  By that measure, Count Three, which first appeared in the Amended Petition filed on May 12, 2014, was timely filed.

Alternatively, this Court recommends that the AEDPA limitations period be equitably tolled.  The Supreme Court has concluded that equitable tolling is available

1  to toll the one-year statute of limitations applicable to 28 U.S.C. § 2254 habeas

2  corpus cases.  *Holland v. Florida*, 560 U.S. 631, 644 (2010). A litigant seeking

3  equitable tolling bears the burden of establishing: "(1) that he has been pursuing his

4  rights diligently, and (2) that some extraordinary circumstance stood in his way,"

5  preventing him from timely filing his petition. *Pace v. DiGuglielmo*, 544 U.S. 408,

6  418 (2005).  "[T]he threshold necessary to trigger equitable tolling [under AEDPA]

7  is very high, lest the exceptions swallow the rule."   As the Ninth Circuit has

8  explained:

9  
10  
> To apply the doctrine in "extraordinary circumstances" necessarily
> suggests the doctrine's rarity, and the requirement that extraordinary
> circumstances "stood in his way" suggests that an external force must
> cause the untimeliness, rather than, as we have said, merely "oversight,
> miscalculation or negligence on [the petitioner's] part, all of which
> would preclude the application of equitable tolling.

11  

12  *Waldron–Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal citation

13  omitted); *see also Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003)

14  (petitioner must show that the external force caused the untimeliness).

15          In Romero's case, it was not oversight, miscalculation or negligence that

16  delayed the filing of Count Three.  Rather, it was the external force exerted by the

17  Arizona Court of Appeals.  Reasonably construed, Romero followed the suggestion

18  in the Court of Appeals order denying the direct appeal of Judge O'Neil's order.  Had

19  the court been explicit about what it expected from litigants in the consolidated cases,

20  surely Romero would have individually appealed Judge O'Neil's order in the context

21  of the consolidated cases and not, as he did, after seeking severance from the

22

1    consolidated case and proceeding in his own separate case.   As the foregoing

2    discussion establishes, not being a reader of tea leaves, it was essentially impossible

3    for Romero or his counsel to satisfy the Court of Appeals demands and timely file his

4    petition.  *See Brambles v. Duncan*, 412 F.3d 1066, (9th Cir. 2005).   The Court finds

5    that he has carried his burden to establish that he was pursuing his rights diligently

6    and that some extraordinary circumstance stood in his way and prevented him from

7    timely filing his petition. *Pace*, 544 U.S. at 418.   Thus, equitable tolling should be

8    granted and Count Three be considered timely filed.

9    **III.    EXHAUSTION AND PROCEDURAL DEFAULT**

10       A state prisoner must exhaust the available state remedies before a federal

11   court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. §

12   2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).   "[A] petitioner

13   fairly and fully presents a claim to the state court for purposes of satisfying the

14   exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through

15   the proper vehicle, and (3) by providing the proper factual and legal basis for the

16   claim."   *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations

17   omitted).

18       Exhaustion requires that a habeas petitioner present the substance of his

19   claims to the state courts in order to give them a "fair opportunity to act" upon these

20   claims. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).   "To exhaust one's

21   state court remedies in Arizona, a petitioner must first raise the claim in a direct

22   appeal or collaterally attack his conviction in a petition for post-conviction relief

13

1   pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then

2   present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d

3   1008, 1010 (9th Cir. 1999).

4        Additionally, a state prisoner must not only present the claims to the proper

5   court, but must also present them fairly.  A claim has been "fairly presented" if the

6   petitioner has described the operative facts and federal legal theories on which the

7   claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

8   F.3d 1396, 1403 (9th Cir. 1995).  "Our rule is that a state prisoner has not 'fairly

9   presented' (and thus exhausted) his federal claims in state court unless he specifically

10  indicated to that court that those claims were based on federal law."  *Lyons v.*

11  *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended on other grounds*, 247 F.3d

12  904 (9th Cir. 2001).  A petitioner must alert the state court to the specific federal

13  constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249

14  F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad

15  constitutional principles, such as due process, equal protection, and the right to a fair

16  trial, are insufficient to establish fair presentation of a federal constitutional claim.

17  *Lyons*, 232 F.3d at 669.

18        Claims may be procedurally defaulted and barred from federal habeas review

19  in a variety of circumstances.  If a state court expressly applied an adequate and

20  independent state procedural bar when the petitioner attempted to raise the claim in

21  state court review of the merits of the claim by a federal habeas court is barred.  *See*

22  *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).  Arizona courts have been consistent

14

1   in the application of the state's procedural default rules.  *Stewart v. Smith*, 536 U.S.

2   856, 860 (2002) (holding that Ariz.R.Cirm.P. 32.2(a) is an adequate and independent

3   procedural bar).  In Arizona, claims not previously presented to the state courts on

4   either direct appeal or collateral review are generally barred from federal review

5   because any attempt to return to state court to present them would be futile unless the

6   claims fit into a narrow range of exceptions.  *See* Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a)

7   (precluding claims not raised on direct appeal or in prior post-conviction relief

8   petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty

9   days of trial court's decision).   Because these rules have been found to be

10  consistently and regularly followed, and because they are independent of federal law,

11  either their specific application to a claim by an Arizona court, or their operation to

12  preclude a return to state court to exhaust a claim, will procedurally bar subsequent

13  review of the merits of such a claim by a federal habeas court.  *Stewart v. Smith*, 536

14  U.S. at 860; *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (Rule 32,

15  Ariz.R.Crim.P. is strictly followed); *State v. Mata*, 185 Ariz. 319, 334-336 (1996)

16  (waiver and preclusion rules strictly applied in postconviction proceedings).

17          **A.      Ground One**

18          It is undisputed that Romero did not federalize his claim that the trial court

19  erred by refusing to give a jury instruction on superseding cause.  It is quite clear

20  from his opening brief on appeal that the claim before the Arizona Court of Appeals

21  was based exclusively on Arizona law.  Ex. A (Appellant's Opening Brief on appeal).

22

1    Because he failed to fairly present this claim to the appellate court, it is not

2    exhausted.  *See Swoopes*, 196 F.3d at 1010.

3         Any attempt by Razo to return to state court to present his Ground One claim

4    would be futile because it would be procedurally barred pursuant to Arizona law.

5    *See* Ariz.R.Crim.P. 32. 1, and 32.2(a) and (b); *Beaty v. Stewart*, 303 F.3d 975, 987

6    (9th Cir. 2002) (a state post-conviction action is futile when it is time-barred); *State v.*

7    *Mata*, 185 Ariz. at 332-337; Ariz.R.Crim.P. 32.1(a)(3) (relief is precluded for claims

8    waived at trial, on appeal, or in any previous collateral proceeding); Ariz.R.Crim.P.

9    32.4(a) (notice of post-conviction review "must be filed within ninety days after the

10   entry of judgment and sentence or within thirty days after the issuance of the order

11   and mandate in the direct appeal, whichever is the later"); Ariz.R.Crim.P. 32.9

12   (petition for review must be filed within thirty days of trial court's decision).

13   Because no state remedies are currently available, Romero's jury instruction claim is

14   technically exhausted and procedurally barred.  *See Coleman v. Thompson*, 501 U.S.

15   722, 732, 735 n. 1 (1991).

16        A federal court may not consider the merits of a procedurally defaulted claim

17   unless the petitioner can demonstrate cause for his noncompliance and actual

18   prejudice, or establish that a miscarriage of justice would result from the lack of

19   review.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).  To establish cause, a

20   petitioner must point to some objective factor external to the defense impeded his

21   efforts to comply with the state's procedural rules.  *Dretke v. Haley*, 541 U.S. 386,

22   393-94 (2004).  "[C]ause is an external impediment such as government interference

1   or reasonable unavailability of a claim's factual basis." *Robinson v. Ignacio*, 360

2   F.3d 1044, 1052 (9th Cir. 2004) (citations omitted).   Ignorance of the state's

3   procedural rules or lack of legal training do not constitute legally cognizable "cause"

4   for a petitioner's failure to fairly present a claim.  *Hughes v. Idaho State Board of*

5   *Corrections*, 800 F.2d 905, 908-10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d

6   1144, 1153 (9th Cir. 2012).   "Prejudice" is actual harm resulting from the

7   constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.

8   1984); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

9        In his Reply, Romero contends that cause exists because his "previous

10   appellate counsel failed to anticipate that Petitioner would feel compelled to seek

11   habeas review, as evidenced by the dearth of constitutional claims in the underlying

12   direct appeal." *Reply to Respondents' Answer* (Doc. 72), p. 10.  However, ineffective

13   assistance of counsel claims must be separately exhausted in state court before they

14   can be offered as "cause" for the procedural default of another claim.  *Cockett v. Ray*,

15   333 F.3d 938, 943 (9th Cir. 2003).  Romero does not contend that he exhausted such a

16   claim.  As such, he has not presented the sort of external impediment sufficient to

17   support a finding of cause for his failure to timely raise this claims in State court.  *See*

18   *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (requiring "some objective factor

19

20

21

22

1   external to the defense" to support a finding of cause).  Therefore, the Court finds

2   that this claim is not subject to review.[4]

3       **B.      Ground Three**

4       In Ground Three, Romero claims that the use of the PWS violated his right to

5   a trial before a jury composed of a fair cross-section of the community.  The Arizona

6   Court of Appeals dismissed the claim after finding it precluded under Rule 32.1,

7   Ariz. R. Crim. P.  The court determined the claim was not exempt from preclusion

8   under Rule 32.2(b), Ariz. R. Crim. P., because "Romero could have but did not

9   challenge on an individual basis Judge O'Neil's ruling by filing a direct appeal or a

10  special action petition."  Typically, such a procedural misstep would not support a

11  finding of "cause" for the default of a claim.  *Schneider v. McDaniel*, 674 F.3d 1152-

12  53 (failure to comply with state's procedural requirements bars habeas relief under

13  the adequate and independent state ground doctrine).  However, as discussed above

14  in relation to the timeliness of this claim, the unique circumstances faced by Romero

---

16  [4] The Court also notes that "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71–72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983)).  Claims of error in state jury instructions are generally a matter of state law that do not raise a constitutional question.  *Gilmore v. Taylor*, 508 U.S. 333, 342–43 (1993).  Romero fails to establish a due process violation here because he may not transform his claim of instructional error into a federal claim by simply asserting a violation of his constitutional rights. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (a petitioner cannot transform a state-law issue into a federal one by simply asserting a due process violation); *see also Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir.1988) (an instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding") (citation omitted).

22

1  after he raised this claim in the State courts compel a finding that an external

2  impediment was created by the Arizona Court of Appeals when it seemingly

3  instructed him to proceed as he subsequently did, only to be told later that he had

4  proceeded incorrectly. *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004)

5  (citations omitted). In this Court's opinion, Romero's counsel reasonably interpreted

6  the Court of Appeals' advice to appeal the PWS issue individually as directing him to

7  proceed under Romero's separate case rather than individually in the context of the

8  consolidated case. Romero's reliance on the Court of Appeals' statement in the

9  consolidated case, *In re Jury Selection Process in Maricopa Cnty*, 220 Ariz. at 531,

10 was reasonable and constituted an external factor that impeded his efforts to comply

11 with the State's procedural rules. *Pizzuto v. Arave*, 280 F.3d 949, 975 (9th Cir. 2002).

12 As such, the Court finds that Romero has established the requisite cause for the

13 default of this claim.

14      However, to have his default excused, Romero must also show that "actual

15 prejudice" resulted from the trial court's use of the PWS system. *Magby v.*

16 *Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984); *Thomas v. Lewis*, 945 F.2d 1119,

17 1123 (9th Cir. 1996). To establish a *prima facie* case that the PWS violated the Sixth

18 Amendment's "fair cross-section" requirement, Romero must show: (1) that the

19 group alleged to be excluded is a "distinctive" group in the community; (2) was not

20 fairly and reasonably represented in jury venires, and (3) that the underrepresentation

21 was due to "systematic exclusion" of the group in the jury-selection process.

22 *Berghuis v. Smith*, 559 U.S. 314, 130 S.Ct. 1382, 1392 (2010) (citing *Duren v.*

1   *Missouri*, 439 U.S. 357, 364 (1979)).  Romero has failed satisfy even these basic

2   requirements.

3        In the Amended Petition, Romero explains that the PWS was a computer

4   program that selected jurors using "an algorithm that increased the selection of

5   potential jurors who were closest to the area of the respective court facility."

6   *Amended Petition* (Doc. 63), ¶ 63.  Romero then details how the system worked, *id.*,

7   ¶¶ 64-67, and argues that Judge O'Neil's analysis of *Taylor v. Louisiana*, 419 U.S.

8   522 (1975) and *Duren*, 439 U.S. 357, constituted "a decision that was contrary to or

9   involved an unreasonable application of clearly established Federal law . . . ,"

10  *Amended Petition*, ¶ 68.  Then, in relation to prejudice, Romero states that "Judge

11  O'Neil never made any specific legal findings relative to prejudice suffered by

12  Romero and that remains an open question."  *Id.*, ¶ 69.  Thus, in the Amended

13  Petition, Romero has not identified the allegedly distinctive group, how they were

14  systematically underrepresented, or what prejudice he suffered as a result.

15       He offers little more in his Reply.  In Romero's argument addressing the

16  Respondents' contention that this claim is procedurally defaulted, he explains that the

17  forced consolidation of his case with the others challenging the PWS system and the

18  delay encountered in seeking severance meant that "[t]he time for Petitioner to resort

19  to state remedies ha[d] lapsed and, as a result, his challenge to the PWJS procedure in

20  Maricopa County would be lost indefinitely if this court were to find his claims

21  procedurally defaulted."  *Reply* (Doc. 72), pp. 10-11.  To the extent that any potential

22  prejudice can be discerned in Romero's argument, it relates to his inability to raise

20

1   the claim in this habeas proceeding.  As noted above, however, he must show that he

2   was prejudiced as a result of the alleged constitutional violation.   Without that

3   showing of prejudice, Romero cannot overcome the procedural default of this claim.

4   It is therefore not subject to habeas review.

5   **IV.   MERITS**

6           Under the AEDPA, a federal court "shall not" grant habeas relief with respect

7   to "any claim that was adjudicated on the merits in State court proceedings" unless

8   the state decision was (1) contrary to, or an unreasonable application of, clearly

9   established federal law as determined by the United States Supreme Court; or (2)

10  based on an unreasonable determination of the facts in light of the evidence presented

11  in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120

12  S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

13  if it fails to apply the correct controlling authority, or (2) if it applies the controlling

14  authority to a case involving facts "materially indistinguishable" from those in a

15  controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212

16  F.3d 1143, 1150 (9th Cir. 2000).   In determining whether a state court decision is

17  contrary to federal law, the court must examine the last reasoned decision of a state

18  court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

19  (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal

20  law either (1) if it correctly identifies the governing legal principle but applies it to a

21  new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

22

1   to extend a clearly established legal principle to a new context in a way that is

2   objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

3   **A.   Ground Two**

4   In Ground Two, Romero alleges that the Arizona Supreme Court's decision in

5   *State v. Martinez*, 210 Ariz. 578 (2005), was "an unreasonable application of federal

6   constitutional law and the application of *Martinez* to this case deprived Romero of

7   his Sixth Amendment rights to a sentencing jury on <u>all</u> facts used to aggravate his

8   sentence. *Amended Petition* (Doc. 63), ¶ 61.   In *Martinez*, the Arizona Supreme

9   Court, applying the United States Supreme Court decisions in *Blakely* and *Apprendi*,

10  held that "once a jury finds or a defendant admits a single aggravating factor, the

11  Sixth Amendment permits the sentencing judge to find and consider additional

12  factors relevant to the imposition of a sentence up to the maximum prescribed in that

13  statute." *Martinez*, 210 Ariz. at 585.   Romero's argument that the Arizona court's

14  holding in *Martinez* was unreasonable under federal law has been uniformly rejected.

15  *See, e.g.*, *Cruz v. Bartous*, 2010 WL 1752506 at *6 (D.Ariz. March 26, 2010);

16  *Gibson v. Blair*, 2008 WL 5329935 at *1 (D.Ariz. December 19, 2008).   Thus, to the

17  extent Romero argues *Martinez* was wrongly decided, his claim is without merit.

18  In an alternative argument, Romero contends that his sentence was imposed in

19  violation of *Blakely* because none of the aggravating factors cited by the trial court

20  was admitted by Romero or determined by the jury to be proven beyond a reasonable

21  doubt.   *Amended Petition* (Doc. 63), ¶ 62.   The trial court rejected this claim by

22  simply citing to the then recent decision in *State v. Martinez*, 210 Ariz. 578.   Ex. H.

1    The Court of Appeals and Arizona Supreme Court then denied review without

2    comment. Exs. J, L.

3         In cases such as this, where there is no reasoned decision from the state's

4    highest court, the federal court "looks through" to the underlying court decision. *Ylst*

5    *v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  Where the underlying state court

6    decision is on the merits but provides no reasoning to support its conclusion, a

7    federal habeas court independently reviews the record to determine whether habeas

8    corpus relief is available under the standards of § 2254(d). *Stanley v. Cullen*, 633

9    F.3d 852, 859-60 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

10   2003).  In such instances, the burden remains with the petitioner to establish there

11   was "no reasonable basis for the state court to deny relief."  *Harrington v. Richter*,

12   562 U.S. 86, 131 S.Ct. 770, 784 (2011).

13        The Sixth Amendment proscribes the imposition of a sentence above the

14   statutory maximum based on a fact, other than a prior conviction, that is not found by

15   a jury or admitted by the defendant. *Apprendi*, 530 U.S. at 490; *Blakely*, 542 U.S. at

16   301. In *Blakely*, the Supreme Court clarified that the "'statutory maximum' for

17   *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis

18   of the facts reflected in the jury verdict or admitted by the defendant . . . .  In other

19   words, the relevant 'statutory maximum' is not the maximum sentence a judge may

20   impose after finding additional facts, but the maximum he may impose without any

21   additional findings."  *Blakely*, 542 U.S. at 303–04. Thus, before a trial court can

22   impose an aggravated sentence above the statutory maximum, a jury must find

23

1    beyond a reasonable doubt, or the defendant must admit, all facts "legally essential"

2    to establish the aggravating factors. *Blakely*, 542 U.S. at 313.

3        In Arizona, "the existence of a single aggravating factor exposes a defendant

4    to an aggravated sentence." *State v. Martinez*, 210 Ariz. 578, 585 (2005) (citing

5    A.R.S. § 13–702). "Therefore, once a jury finds or a defendant admits a single

6    aggravating factor, the Sixth Amendment permits the sentencing judge to find and

7    consider additional factors relevant to the imposition of a sentence up to the

8    maximum prescribed in that statute." *Id*.   Arizona's procedure of allowing the

9    sentencing judge to consider additional aggravating factors and impose an aggravated

10   sentence if the jury finds, or the defendant admits, at least one statutory aggravator, is

11   permitted under *Apprendi* and *Blakely* because the Supreme Court has stated that trial

12   courts may consider any relevant evidence in determining what sentence is

13   appropriate within the authorized range. *See Apprendi*, 530 U.S. at 481.

14       Here, it appears that the trial court violated the Sixth Amendment by imposing

15   aggravated sentences for both the manslaughter and aggravated assault charges based

16   on aggravating factors that were neither admitted by Romero nor found beyond a

17   reasonable doubt by a jury.   Under the Arizona sentencing statutes in effect on

18   February 14, 2003, the date of Romero's sentencing, the presumptive sentence for

19   manslaughter with a finding of dangerousness, a class 2 felony, was 10.5 years. *See*

20   A.R.S. § 13-604(I) (2003).   The presumptive sentence for aggravated assault with a

21   finding of dangerousness, a class 3 felony, was 7.5 years. *Id*.   The presumptive

22   sentences could be aggravated for a number of reasons listed in A.R.S. § 13-702(C)

1   (2003).  *Id*.  The aggravated maximum sentence for manslaughter was 21 years and

2   for aggravated assault it was 15 years.  A.R.S. § 13-604(I) (2003).

3          Relying on these sentencing statutes, the trial court sentenced Romero to

4   aggravated terms of 21 years on each of the four manslaughter counts, and to

5   aggravated terms of 10 years on each of the three aggravated assault counts.  Ex. Z.

6   However, each of the terms for manslaughter were to run concurrently, and each of

7   the terms for aggravated assault were to run concurrently, but the terms for

8   manslaughter and aggravated assault were to run consecutively, resulting in a

9   sentence totaling 31 years.  Ex. Z.[5]

10         Before imposing the sentences, the trial court stated that:

11             I do find that the aggravating factors in your case do involve the
       enormous physical, emotional and financial impact you've had on the
12     victims, their family members, that includes the victims who survived
       this accident. The speed and alcohol are aggravating factors. The
13     potential lack of remorse or responsibility that you are taking for these
       actions, the suffering of at least one victim from the testimony we
14     heard prior to his death because of this accident and the number of
       deaths and the victims I think do require an aggravated sentence, not
15     only as to the deaths but also as to the class three felony.

16   Ex. Y, p. 89.  A review of the statutory aggravating factors listed in A.R.S. § 13-

17   703(C) (2003), discloses that only one of the factors cited by the trial court, the

18   physical, emotional and financial impact on the victims, is clearly included in the list.

19

20   _____

21   [5] As Respondents note, the trial court, without aggravating the sentences, could have
     sentenced Romero to consecutive presumptive terms of imprisonment for
22   manslaughter (4x10.5) and aggravated assault (3x7.5) totaling 64.5 years'
     imprisonment.

1  *See* A.R.S. § 13-703(C)(9) (2003).[6]  However, the record discloses that this factor, or

2  any of the non-statutory factors considered, was not admitted by Romero or found to

3  be true beyond a reasonable doubt by the jury.  Thus, Romero's rights under the

4  Sixth Amendment were violated when the trial court imposed aggravated sentences.

5  *Apprendi*, 530 U.S. at 490; *Blakely*, 542 U.S. at 301.

6       However, even where constitutional error is present, a habeas court must

7  determine whether the error was harmless under *Brecht v. Abrahamson*, 507 U.S.

8  619, 623 (1993). *See Washington v. Recuenco*, 548 U.S. 212, 221–22 (2006) (holding

9  that harmless error analysis applies to a claim of Sixth Amendment *Blakely* error

10  based on the failure to submit a sentencing factor to a jury).  Constitutional error in

11  this context is not harmless if it had a "substantial and injurious effect" upon the

12  sentence.  *Brecht*, 507 U.S. at 623.  Under that standard, this Court must grant relief

13  if it is in "grave doubt" as to whether a jury would have found the relevant

14  aggravating factors beyond a reasonable doubt.  *Butler v. Curry*, 528 F.3d 624, 648

15  (9th Cir. 2008) (citing *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

16       Here, there is no "grave doubt" that a reasonable juror could have failed to

17  find beyond a reasonable doubt at least one of the aggravating factors that the trial

18  court considered in imposing the aggravated sentence – the physical, emotional and

19  _____

20  [6] Driving under the influence at the time a violation is committed is also listed as an
    aggravating factor, but it requires an alcohol concentration of 0.15 or more.  A.R.S. §

21  13-702(C)(16) (2003).  The evidence presented in this case indicates the alcohol
    concentration in Romero's blood at the time of the collisions was .139.  Ex. C, Att. 1,

22  pp. 2-3.

1    financial harm to the victims and their families.  In conducting harmless error review,

2    this Court is permitted to consider evidence presented at sentencing proceedings.

3    *Butler*, 528 F.3d 624, 648 (9th Cir. 2008).   A review of the transcript of the

4    sentencing hearing in this case not only dispels any doubt, but in fact compels

5    certainty that Romero's actions resulted in severe physical, emotional, and financial

6    impact on the victims and their families.

7            In the collision, Romero killed Teri and Efrain Hernandez and their two year-

8    old daughter, Maya.  Ex. DD, p. 23.  He also killed Antonio Olivares, who was a

9    passenger in his vehicle, injured Mark Resiniko, who suffered multiple strains,

10   numbness, soreness and bruising, injured Susan Baregray, who suffered a severely

11   broken right leg, and Louise Gregara, who suffered a severe closed head injury and

12   bleeding on the brain.  *Id*., pp. 22-23.  At the sentencing hearing, the court heard from

13   one victim, Suzanne Baregray.  The vehicle in which Ms. Baregray and her husband,

14   victim Mark Resiniko, were traveling was hit by Romero and his SUV.  Ex. Y, pp. 6-

15   7.  Ms. Baregray explained to the trial court that a day does not go by without her

16   being reminded how her life and marriage have been changed as a result of the

17   accident.  *Id*., p. 7.  She spent three months in bed and another three months learning

18   how to walk after the accident.  *Id.*  She was left unable to perform her previous work

19   and now works in a position that pays half what she previously earned.  *Id*.  The

20   change has caused her family financial strife and has impacted her relationship with

21   her husband.  *Id*., p. 8.

22

1    The court also heard from a number of Teri, Efrain and Maya's friends,

2    including Maya's godmother.   However, because the relevant aggravating factor

3    references the victim's family, the testimony of the five family members is briefly

4    described herein.   Marilyn Salomon, Teri's mother, described the impact of the loss

5    of Teri, Efrain and Maya.   She explained that her parents taught her about the legacy

6    created by conducting her life to set an example for her children, but that

> [n]ow, this natural order of events can never be.   Our children are
> leaving their legacy to us.   We buried our children.   We chose their
> caskets and planned their funeral.   We buried with them their dreams
> for continuing to make this world a better place, or sharing the joys of
> parenthood with Maya and with having more children.   We buried their
> passion for loving and living and we in turn have buried a part of who
> we were with them for we can never be the same.

11   Ex. Y, p. 46.   She spoke of Teri's passion for life and insatiable curiosity, her love for

12   Efrain and Maya, her dream of becoming a doctor, and of the irrevocable pain caused

13   by her loss.   *Id*., pp. 47-48.   She described Efrain's rich legacy—his struggle and

14   success in becoming a United States Citizen, meeting his goal of graduating from

15   Mesa Community College, his desire to become a healer, his well-kept garden, and

16   his love for Teri and Maya.   *Id*., pp. 50-53.   She expressed the delight of dancing,

17   singing and eating blueberries with Maya, and witnessing her discover the world.

18   *Id*., p. 54-55.   Teri's dad, Chuck Salomon, recalled Teri's birth and naming her in

19   honor of her two great grandmothers.   *Id*., p. 57.   He remembers taking her fishing,

20   and her first day of school, and her learning to play the flute, the same instrument he

21   played.   *Id*., p. 58.   He recalled Teri's devotion to Maya and his own relationship

22   with his granddaughter.   Finally, he explained, "I remember all this because it is all I

28

can do.  There is no future to look forward to, they are all gone and all I can do is remember." *Id.*, pp. 59-60.

Phyllis Koppelman, Teri's aunt and Maya's great aunt, described Teri's childhood and caring for Maya, and asked:

> How does one measure the loss of life?  By the sadness I feel that has no name?  By how hard it is to choke back the tears when I see the anguish in the eyes of my sister, my brother-in-law, my niece or my nephew or by how bittersweet it is to watch my niece Alicia nurse her infant son who will never know his cousin?  Or does one measure grief?  Does one measure the loss of life by the unfathomable grief in the faces of our family members and friends whose lives they've touched?

Ex. Y, pp. 37-38.  Teri's brother, Cliff Salomon, described the emptiness he felt without his sister, brother-in-law and niece, and explained that he bought their house after they were killed and sleeps in the same room where he held Maya for the first time.  *Id.*, pp. 40-41.  Alicia Williams, Teri's sister, described growing up with Teri and the inspiration she provided.  She told the court that her son was named in honor of Teri, and that the loss of Teri and her family left "scars on our hearts that can never be erased."  *Id.*, pp. 43-45.

In light of the testimony of Ms. Baregray and the family members of Teri, Efrain and Maya at sentencing, the Court is not only without "grave doubt," but is without any doubt whatsoever that no reasonable juror could have failed to find beyond a reasonable doubt that the victims and their families suffered through unimaginable physical, emotional and financial harm as a result of Romero's actions.  As such, the trial court's consideration of this statutory aggravating factor without

1   first submitting it to a jury was harmless.  Under Arizona's sentencing scheme, once

2   one *Blakely*-compliant aggravating factor was found, Romero was exposed to the

3   fully aggravated sentencing range and the trial court was free to consider any

4   "additional factors relevant to the imposition of a sentence up to the maximum

5   prescribed in that statute."  *Martinez*, 115 P.3d at 625; *see Nino v. Flannigan*, 2007

6   WL 1412493, at *4 (D.Ariz. May 14, 2007) (finding that because one *Blakely*-

7   compliant aggravating factor supports an aggravated sentence, the court's

8   consideration of other factors does not violate the Sixth Amendment). Accordingly,

9   Romero is not entitled to habeas corpus relief on Ground Two.

10  **V.     RECOMMENDATION**

11       Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

12  District Court, after its independent review, **deny** Romero's Amended Petition for

13  Writ of Habeas Corpus (Doc. 63).

14       This Recommendation is not an order that is immediately appealable to the

15  Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

16  Federal Rules of Appellate Procedure, should not be filed until entry of the District

17  Court's judgment.

18       However, the parties shall have fourteen (14) days from the date of service of

19  a copy of this recommendation within which to file specific written objections with

20  the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

21  Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days

22  within which to file a response to the objections.  Replies shall not be filed without

1    first obtaining leave to do so from the District Court.  If any objections are filed, this

2    action should be designated case number: **CV 08-0542-PHX-ROS**.  Failure to timely

3    file objections to any factual or legal determination of the Magistrate Judge may be

4    considered a waiver of a party's right to *de novo* consideration of the issues.  *See*

5    *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (*en banc*).

6          Dated this 11th day of February, 2015.

7

8                                                  _____

9                                                  Jacqueline M. Rateau
                                                   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22